STATE ex rel. SMALL, Appellant v. HUGHES COUNTY
COMMISSION et al., Respondents

(133 N.W.2d 228)

(File No. 10158.   Opinion filed February 17, 1965)

**Roubideaux, Poches & Reade,** Fort Pierre, for plaintiff and appellant.

**Robert D. Hofer,** Hughes County State's Atty., Pierre, for defendants and respondents.

HANSON, J. A Writ of Prohibition is requested in this tax-payers' action to restrain and prohibit the Commissioners of Hughes County from entering into a certain contract for the rental of road equipment and labor on an hourly basis. The Writ having been denied by the lower court, the taxpayers have appealed.

The facts are not in dispute. In December 1963 the Commissioners of Hughes County caused a Notice to Bidders to be published requesting sealed bids for the rental of certain described road building equipment together with operators therefor on an hourly rental basis. The Notice specified the successful bidder would have to furnish all operational and maintenance expense on the equipment, pay transportation costs, and keep daily time cards on each piece of machinery. Bids were to be opened, read, and considered on January 7, 1964. On the day appointed the Commissioners accepted the lone bid of Allen Johnson & Sons Construction Company. This was contrary to the request of plaintiff and a delegation of other taxpayers who were present at the meeting protesting the same as an unauthorized and unlawful contract.

There is no claim or evidence of fraud or wrongdoing on the part of the county officials or the contractor with reference to the proposed rental contract. The question presented concerns the legality of such procedure. In years past and in accordance with several opinions of the Attorney General[1] the Hughes County Commission has rented road equipment and machinery on an hourly rental basis. For the period ending June 30, 1960 the County expended $87,968.57 for this purpose. In 1963 $70,320.90 was expended.

■ The County Commission contends it is empowered to rent road machinery and equipment on an hourly basis and to construct, repair, and maintain the entire county highway system with such rental equipment under the authority of "day labor" without preliminary plans, specifications, surveys, cost estimates, or advertisement for bids of any kind on any project regardless of estimated cost. We cannot agree.

1. 1953-54 AGR p. 114, 1955-56 AGR p. 372, and 1959-60 AGR p. 368.

A board of county commissioners is expressly empowered to lease any scraper, grader, road tools or machinery belonging to a county to a contractor. SDC 28.0118. The reverse of this authority is nowhere expressly granted. However, it might be implied from a county's authority "to purchase drags, road planers, tractors, and other approved mechanical devices to maintain properly the county highway system." SDC 28.0312. This was the conclusion reached in Galloway v. Road Improvement Dist. No. 4 of Prairie County, 143 Ark. 338, 220 S.W. 450, in which the court said "The power obviously conferred was to procure the implements, and the word 'purchase' was used as a mere direction as to the means of exercising the power. The authority to purchase being the greater of the powers to be exercised, necessarily included the lesser power to lease or to accept as a donation." Also see Guillot v. State Highway Commission of Montana, 102 Mont. 149, 56 P.2d 1072. In a left-handed manner our legislature has recognized the power of a county to rent road machinery. In outlining the duties of a county highway superintendent SDC 1960 Supp. 28.0304 provides that he shall "keep a detailed record of the cost of any work on any section of the highway * * * done under his supervision by the county, by day labor and shall immediately upon completion of each piece of work file such record with the county auditor, showing * * * * a proper proportion of the yearly equipment depreciation * * * rental of machinery and every other item of cost * * *." For the same reason it may be assumed the legislature did not intend to repeal by implication any portion of SDC 28.03 by the enactment of SDC 1960 Supp. 65.07 as we recently held in Hauck v. Bull, 79 S.D. 242, 110 N.W.2d 506, with reference to township highway work performed by a private contractor in the absence of competitive bids. However, it is unnecessary to decide this question here as SDC 28 and SDC 1960 Supp. 65.07 mutually require preliminary plans, specifications and advertisement for competitive bids for any public improvement involving an expenditure in excess of $1,000.

Therefore, assuming for the purpose of this action that a county has implied power to rent road equipment we may consider defendants' further contention that such rental equipment may

be used to construct, repair and maintain the entire county high-way system under the guise of "day labor" without further con-tract letting, plans, specifications, surveys, or cost estimates un-der the authority of SDC 28.0309 which provides:

"Any road, tile, and culvert construction, repair work, or materials therefor upon the county highway system, for which the county highway superintendent's estimated cost is one thousand dollars or less, may be advertised and let at a public letting by the board of county commissioners, or may be let privately at a cost not to exceed the county highway superintendent's esti-mate, or may be built by day labor.

"Any road, tile, or culvert construction, repair work, or materials therefor for which the county highway sup-erintendent's estimated cost shall exceed one thousand dollars, shall be advertised and let at a public letting by the board of county commissioners or may be built by day labor. Such board shall have the power to re-ject all bids, in which event it may readvertise or let privately by submitting the contract to the Commission. for approval."

The above statute does not grant a county broad and un-restrained power to do any and all county highway work with-out contract by day labor as defendants contend. Nor can it be read in isolation separate and apart from the whole of SDC 28. A companion statute, SDC 28.0115, specifies that when any "road, tile, culvert construction, repair work, or materials upon a coun-ty highway system or secondary roads, the cost exceeds one thousand dollars * * * and after plans and specifications therefor have been prepared and filed in the office of the county auditor, the board having charge shall designate a time * * * at which sealed bids for such work or materials will be received, and shall cause notice thereof to be published once each week for two successive weeks in one of the official newspapers of the county. Such notice shall state where plans and specifica-tions may be examined, when and where bids will be opened,

a brief statement of the principal items of work and materials contemplated by the improvement, and the location of the same * * *." The advertisement for bids caused to be published by defendants for the rental of road equipment in no manner conforms to the requirements of either SDC 28.0115 or SDC 28.0309.

Before any highway, tile, or culvert work is performed on a county highway system either by contract or by day labor SDC 28.03 contemplates and requires that surveys shall first be made and plans and specifications prepared and approved. This policy is permissively stated in SDC 28.0306 with reference to permanent improvements in the following language:

"Before any permanent improvement is undertaken upon the county highway system, the county highway superintendent shall, under the general direction of the board of county commissioners where deemed necessary, make or have made a survey and prepare or have prepared plans, specifications, and estimates for the improvement. Such survey, plans, specifications and estimates shall be prepared according to standards to be prescribed by the Commission, and shall be on the basis and with the object in view of permanent improvement, each as to bridge, culvert, tile, and road work."

and mandatorily required by SDC 28.0308 before the commencement of any road, tile, or culvert construction work as follows:

"After the survey and plan for each section of the county highway system has been prepared by or for the county highway superintendent, and specifications and an estimate of the cost therefor also prepared and approved by the board of county commissioners, such board of county commissioners may thereupon proceed as provided in this chapter with the construction of the road, tile, and culvert work in accordance therewith."

The manner and authority for constructing bridges is separately and in detail provided for in SDC 1960 Supp. 28.1408. It provides:

"In lieu of accepting any bids received upon any bridge, approach, or abutment, or repair to bridge, or in case of emergency, the board of county commissioners may, if in their judgment such bridge or piece of work may be procured for less money than the amount of any bid submitted, cause the same to be built by day labor by regular county labor and county-owned equipment. Such construction shall be in charge of the county highway superintendent and he shall hire a foreman, purchase the necessary material, and hire the necessary labor for the construction of each and every such bridge, or piece of work, and such work shall be done in accordance with plans and specifications therefor furnished by the Commission the same as any other bridge or piece of work let by contract. The county highway superintendent shall keep a careful and itemized account of the quantity and cost of all materials and labor used in the construction of each such bridge or piece of work, in a standard form prescribed by the Commission, and such cost statement shall be filed with the county auditor and a copy transmitted to the Commission as in the case of the cost statement of any other bridge or piece of work as provided in this chapter."

With reference to plans and specifications the State Highway Commission is required to "prepare and furnish to the counties [a standard] standards to govern the method of making surveys, plans, and specifications for work upon the county highway systems * * *" SDC 1960 Supp. 28.0208 and where the county superintendent of highways "is not an engineer he shall have power and authority [with the approval of the county commissioners] to employ an engineer whenever necessary to survey and to do other engineering work." SDC 1960 Supp. 28.0305.

■ Defendants admit the highway work contemplated to be performed by Allen Johnson & Sons on an hourly rental basis will exceed the sum of $1,000. The evidence indicates individual construction projects will also be in excess of that amount. The record further shows the County Highway Superintendent has not made, and does not intend to make, any surveys for any

planned construction work and he has not prepared, and does not intend to prepare, any plans, specifications, or cost estimates on any highway construction, repair, or maintenance project upon which the rental equipment will be used. According to his testimony he figures out the best way and the contractor performs the work under the superintendent's supervision and to his satisfaction. There is no authority for such a casual and informal method of constructing, repairing, and maintaining our county highway systems. The legislative purpose of requiring plans, specifications, cost estimates, and advertisements for bids on a competitive basis—before day labor may be employed—is to provide for an orderly and systematic development of a county highway system; to provide comparative cost estimates and yardsticks; and to guard against favoritism, improvidence, extravagance, fraud, and corruption. See Fonder v. City of South Sioux Falls, 76 S.D. 31, 71 N.W.2d 618, 53 A.L.R.2d 493. The procedure employed by Hughes County fulfills none of these purposes or objectives. In the absence of any surveys, plans, specifications, cost estimates, and advertisement for competitive bids on projects exceeding $1,000 for the year 1964 the Writ of Prohibition should have been issued restraining the county from using the rental road equipment in the manner contemplated. See Board of County Road Com'rs of Wayne County v. Lingeman, 293 Mich. 229, 291 N.W. 879, Hokke v. Passaic County, 3 N.J.Misc. 245, 127 A. 813, Folkers v. Butzer, 294 Ill.App. 1, 13 N.E.2d 624, and State ex rel. Collins v. Garretson, 207 Iowa 627, 223 N.W. 390.

Reversed.

All the Judges concur.